IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JI GUO WU, SHOUHUAI YANG, XIUJU
DENG, CHUNYANG CAI, CUIMIN TIAN,
SUHONG YANG, ZHEN LEI, and XINBIN
TIAN,

      Plaintiffs,

v.

EAST OCEAN AGRICULTURE CORP. and
XIANDONG SHI,

      Defendants.

Civil Action No. 21-668-RGA

MEMORANDUM OPINION

Katherine Butler, KATE BUTLER LAW LLC, Wilmington, DE; Jian Hang, HANG LAW, Flushing, NY,

    Attorneys for Plaintiff Ji Guo Wu.

Antranig N. Garibian, GARIBIAN LAW OFFICES, P.C., Wilmington, DE; Heng Wang, WANG, GAO & ASSOCIATES, P.C., Metuchen, NJ,

    Attorneys for Plaintiffs Shouhuai Yang, Xiuju Deng, Chunyang Cai, Cuimin Tian, Suhong Yang, Zhen Lei, and Xinbin Tian.

Lauren E.M. Russell, POTTER ANDERSON & CORROON LLP, Wilmington, DE; Ying Liu, Carolyn Shields, LIU & SHIELDS LLP, Flushing, NY,

    Attorneys for Defendants.

February 10, 2025

ANDREWS, U.S. DISTRICT JUDGE:

Before me is Defendants East Ocean Agriculture Corp. ("East Ocean") and Xiandong Shi's "motion for partial summary judgment on Counts I, II, III" of Plaintiffs' First Amended Complaint ("FAC"). (D.I. 109). The motion states that it is based on Rule 56. (Id.). In fact, the motion has two parts. One is based on Rule 56; one is not.

The motion has been fully briefed, and I have considered the parties' briefing. (D.I. 110, 114, 116, 118, 120). For the reasons set forth below, Defendants' motion is denied.

## I.   BACKGROUND

East Ocean operates a farm in Bridgeville, Delaware. (D.I. 23 ¶ 7). Plaintiffs are eight individuals who were previously employed by Defendants. (Id. ¶ 6). At least some of them are described by their counsel as "old and illiterate." (D.I. 112-1 at 30 of 102). Plaintiffs allege Defendant Shi has been the sole owner of the farm since December 2018 and supervised Plaintiffs. (D.I. 23 ¶¶ 10–11). Plaintiffs brought this action against Defendants under the Fair Labor Standards Act ("FLSA"), the Minimum Wage Act of the State of Delaware ("MWA"), and the Wage Payment and Collection Act ("WPCA"), alleging failure to pay overtime wages, failure to pay minimum wages, unpaid wages, and retaliation. (Id. ¶ 1; D.I. 1 ¶¶ 52–76).

Defendants filed a motion to dismiss Plaintiffs' Complaint, which I granted in part. (D.I. 10, 22). I dismissed the claims of overtime wages under the FLSA and minimum wages under the MWA with respect to all Plaintiffs. (D.I. 22 at 1). I dismissed the minimum wages and unpaid wages claims under the FLSA with respect to Plaintiff Zhen Lei. (Id.). I granted Lei leave to amend those claims. (Id.). I dismissed the unpaid wages claim under the WPCA with respect to five Plaintiffs. (Id.).

Plaintiffs then filed their First Amended Complaint ("FAC"). (D.I. 23). Lei included additional factual allegations. (*Id.* ¶ 54). Four claims now remain in this action: failure to pay minimum wages under the FLSA (Count I), unpaid wages under the FLSA (Count II), unpaid wages under the WPCA (Count III), and retaliation under the FLSA (Count IV). (*Id.* ¶¶ 55–70).

Defendants' motion is truly "partial." It relates to only three of the eight Plaintiffs. Defendants move for "summary judgment" as to all claims asserted by Plaintiffs Shouhuai Yang and Xiuju Deng, and as to Counts I and II asserted by Plaintiff Ji Guo Wu. (D.I. 109; D.I. 110 at 1).

Yang and Deng were employed by Defendants as farm workers. (D.I. 23 ¶ 35). They allege the following about their employment with Defendants, most of which Defendants deny or submit they lack sufficient knowledge to form a belief (D.I. 24 ¶¶ 35–40):

- Yang and Deng were a couple, both employed by Defendants from August 2017 to December 2019. (D.I. 23 ¶ 37).

- Yang's salary was $3,000 per month and Deng's was $2,700 per month. (*Id.* ¶ 36).

- Yang and Deng generally worked more than eleven hours a day, totaling seventy-seven hours per week. (*Id.* ¶ 38).

- Yang and Deng worked more than thirteen hours per day from December 2018 to February 2019. (*Id.* ¶ 39).

- Yang and Deng received no payment from Defendants from November 2019 to December 2019. (*Id.* ¶ 40).

Wu was employed by Defendants as a driver. (*Id.* ¶ 13). Wu alleges the following about his employment with Defendants, most of which Defendants deny or submit they lack sufficient knowledge to form a belief (D.I. 24 ¶¶ 14–22):

3

- Wu was employed by Defendants from September 27, 2017 to July 20, 2020. (D.I. 23 ¶ 14).

- Wu would work more than twelve hours a day, seven days a week, totaling more than eighty-four hours a week. (*Id.* ¶ 17).

- Wu's salary was $5,000 per month from September 27, 2017 to August 30, 2019, and $8,000 per month from August 30, 2019 to July 20, 2020. (*Id.* ¶¶ 18, 20).

- Shi paid Wu's salary for the period from April 15, 2019 to August 30, 2019 and from September 2019 to November 2019. (*Id.* ¶¶ 19, 21).

- Shi acknowledged he owed Wu $97,500 for wages for 19.5 months. (*Id.* ¶ 19).

- Shi fired Wu on July 2020 after Wu complained about not receiving his wages. (*Id.* ¶ 22).

## II.  LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claim in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those "that could affect the outcome" of the proceeding. *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "[A] dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Id.* The burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). The non-moving party's evidence "must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Williams*, 891 F.2d at 461.

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

## III. DISCUSSION

### A. Deng and Wang

Defendants use the term "summary judgment" in connection with the motion pertaining to Deng and Yang. (D.I. 109). But it is not a summary judgment motion. It is a motion for sanctions based on a failure to comply with discovery obligations. (D.I. 110 at 1). Defendants point to multiple emails their counsel sent to Plaintiffs' counsel attempting to schedule a virtual deposition of Deng and Yang, many of which went unanswered or which counsel responded to in

an unhelpful manner. (*Id.* at 2–4). According to Defendants, Deng and Yang's lack of cooperation to coordinate a mutually acceptable deposition time and failure to appear for a scheduled deposition means their claims should be "dismissed" and summary judgment entered in Defendants' favor under Rule 37. (*Id.* at 1, 9, 12). Defendants also argue it should be granted summary judgment because Deng and Yang failed to prosecute the case, citing Rule 41. (*Id.* at 8).

Defendants argue that dismissal is mandatory, then argue when it is appropriate under Rule 37. (*Id.* at 9). Defendants argue that the factors for failure to appear for a deposition, which are considered under motion to dismiss, weigh in favor of its motion for summary judgment. (*Id.* at 10–12).

Plaintiffs argue that Defendants' motion should be denied because they did not meet the standard for summary judgment and are disguising a sanctions motion as a motion for summary judgment. (D.I. 114 at 2). Plaintiffs argue that, should I consider Defendants' motion as a motion for sanctions, I should deny it. (*Id.* at 3).

In their reply brief, Defendants assert that they are moving to dismiss the case against Deng and Yang, not moving for partial summary judgment. (D.I. 116 at 1).

I do not think Defendants are moving for summary judgment against Deng and Yang. To the extent they are, their request is denied. To the extent Defendants are raising discovery issues, they did not follow the procedures set forth in the scheduling order. (D.I. 33 at 3). Thus, to the extent their request is for dismissal or sanctions for not being cooperative in discovery, that too is denied.

That being said, there is nothing further currently scheduled in this case. Defendants appear to have been extremely reasonable in trying to schedule depositions, either in person or

remotely. (*See* D.I. 112-1 at 2–45 of 102). I do not think Defendants had to agree to telephone depositions. And, I appreciate the instinct not to schedule unnecessary discovery disputes. I also appreciate the difficulties faced by Plaintiffs' counsel when clients are "old and illiterate" and working at remote farms in the sparsely populated rural areas of the country, when it seems likely Plaintiffs are close to indigency and need an interpreter.[1]

Plaintiffs' counsel will be ordered to provide the locations of Deng and Yang. If the parties cannot promptly arrange a video deposition after that, I will set a date for an in-person deposition, which may be scheduled in Delaware.

### B. Wu

Defendants argue summary judgment should be entered in their favor against Wu as to Counts I and II because Wu is an "exempt employee" under the FLSA. (D.I. 110 at 1).

Some of the FLSA's provisions do not apply to exempt employees. 29 U.S.C. § 213. The excluded provisions include the minimum wage requirement, which is the subject of Count I. *Id.* §§ 206, 213. An exempt employee is one that is "employed in a bona fide executive, administrative, or professional capacity." *Id.* § 213(a)(1). For Wu to be an exempt employee, he must meet the following requirements:

> (1) Compensated on a salary basis pursuant to § 541.600 at a rate of not less than $684 per week . . . ;
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
> (3) Who customarily and regularly directs the work of two or more other employees; and
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

---

[1] The scheduling order states that the parties "expect interpreters to be required." (D.I. 33 at 2).

7

29 C.F.R. § 541.100(a) (2020).[2]

### 1. Count I

Wu's Count I is for failure to pay minimum wages under the FLSA. (D.I. 23 ¶ 55–57). An employer's failure to pay minimum wages under the FLSA does not apply to exempt employees. 29 U.S.C. §§ 206, 213. Wu argues he does not meet any of the four requirements for exemption. (D.I. 118 at 3–5).

#### a. Salaried Employee

To be exempt, an employee must be salaried. 29 C.F.R. § 541.100(a)(1) (2024). The regulations define a salaried employee as one that "receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." *Id.* § 541.602(a) (2024).

Defendants argue that Wu satisfies the salaried employee requirement of an exempt employee because he was salaried at more than $684 per week. (D.I. 110 at 4). Wu does not dispute that he was to be paid over $684 per week, but argues he was not paid each week he worked and was thus not "salaried." (D.I. 118 at 3). Wu cites to a declaration for support, but the declaration was improperly filed and removed from the docket. (*Id.*). Wu has not re-filed the declaration.

---

[2] This section of the regulations was updated in 2024 and contains slightly different language in subsection (1). 29 C.F.R. § 541.100(a) (2024). The new language incorporates another section that lays out the most recent salary requirements to be an exempt employee. *Id.*; *Id.* § 541.600 (2024). I use the earlier regulations because the new salary minimums are applicable beginning in July 2024, but Wu was employed from 2017 to 2020. *Id.* § 541.600 (2024); (D.I. 23 ¶ 14). The elements for exemption are otherwise the same between the two versions.

Defendants argue that "regularly receives" does not mean "always receives" and that Wu does not lose his exempt status because of any alleged nonpayment by Defendants. (D.I. 120 at 4). Defendants argue that Wu offers no facts to support his contention since his declaration was removed and that I can thus treat Defendants' assertions as undisputed. (*Id.* at 2).

There is no dispute that the amount Wu was to receive was "predetermined" and "not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a) (2024). The issue is whether any failure by Defendants to consistently pay Wu's salary defeats his potential exempt status.

Wu points to no case law to support his contention that Defendants' failure to pay him weekly means he is not exempt. (D.I. 118 at 3). Defendants point to non-binding case law and an early 2000s version of the regulations, which has since been amended. (D.I. 120 at 5–6). Defendants cite to cases that supposedly stand for the proposition that "regularly receives" does not mean "always receives." (*Id.* at 5); *see, e.g., Pioch v. IBEX Eng'g Servs., Inc.*, 825 F.3d 1264, 1269 (11th Cir. 2016); *Nicholson v. World Bus. Network*, 105 F.3d 1361, 1362 (11th Cir. 1997); *Donovan v. Agnew*, 712 F.2d 1509, 1517 (1st Cir. 1983). Most of the cases cited by Defendants discuss the FLSA prior to a 2004 amendment. At least one circuit court opined that the 2004 amendment changes how courts should decide whether an employee is salaried under the FLSA exemptions. *See Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 848 (6th Cir. 2012). The Court of Appeals for the Sixth Circuit opined that, in light of the amendment, the "new regulation now focuses on pay received, rather than the terms of the employment agreement." *Id.* at 847 (cleaned up); *see also Higgins v. Bayada Home Health Care Inc.*, 62 F.4th 755, 760 (3d Cir. 2023) (explaining that, under a 2021 version of the regulations, "an employer may not diverge from paying its employees on a salary basis, lest the employees

9

lose their status as workers exempt from the wage and overtime requirements of the FLSA").

Indeed, the post-2004 regulations say:

> An employer who makes improper deductions from salary shall lose the exemption if the facts demonstrate that the employer did not intend to pay employees on a salary basis. An actual practice of making improper deductions demonstrates that the employer did not intend to pay employees on a salary basis.

29 C.F.R. § 541.603(a) (2024). Factors a court should consider when determining if an employer had a practice of making improper deductions include:

> [T]he number of improper deductions, particularly as compared to the number of employee infractions warranting discipline; the time period during which the employer made improper deductions; the number and geographic location of employees whose salary was improperly reduced; the number and geographic location of managers responsible for taking the improper deductions; and whether the employer has a clearly communicated policy permitting or prohibiting improper deductions.

(*Id.*).

Defendants, in citing outdated regulations and case law, have not met their burden to show there are no genuine disputes of material fact and that they are entitled to judgment as a matter of law. Wu does not dispute, and indeed alleges in his FAC, that he was to be paid a set salary of $5,000 per month, which increased to $8,000 per month. (D.I. 23 ¶¶ 18, 20). But the parties disagree about how often Wu failed to receive payment, and who is at fault for any lapse in payment. Wu contends he was not paid "anything for many months," specifying that Shi acknowledged in 2019 that Wu was owed more than nineteen months of wages. (D.I. 15 ¶¶ 17–18).[3] Defendants generally deny that there any lapses in Wu's payments and, even if he did not receive some money owed to him, it was only about one month's worth. (D.I. 110 at 14; D.I.

---

[3] The cited exhibit is a declaration from Wu filed with his brief in opposition to the earlier motion to dismiss. (D.I. 15). Per the Federal Rules, I can consider any materials in the record when deciding a motion for summary judgment. FED. R. CIV. P. 56(c)(3).

10

120 at 4, 7). Further, Shi, in a declaration, claims it was Wu's responsibility to pay himself so any lapse in payment is attributable to Wu, not Defendants. (D.I. 111 ¶ 5). Wu does not address whether it was his responsibility to pay himself; he alleges that Defendants failed to pay him. (*See* D.I. 15 ¶¶ 17–19).

Considering the frequency with which pay was improperly deducted is a factor considered in determining whether an employee loses their exempt status, and the parties dispute how often that happened and who is at fault, Defendants have not shown that Wu's compensation qualifies him to be an exempt employee.

### b. Management

To be exempt, an employee's primary duty must be "management." 29 C.F.R. § 541.100(a)(2) (2024). The regulations define "management" as:

> [A]ctivities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

*Id.* § 541.102 (2024).

Defendants argue that Wu's primary duty was management of East Ocean. (D.I. 110 at 13–14). Defendants point to the following, as alleged in Shi's declaration and other exhibits, for support: Wu paid himself, paid others, was a shareholder and officer of East Ocean, was a signatory on East Ocean's bank account, had authority to collect proceeds from sales, made a business card where he identified himself as a "manager" of East Ocean, recruited employees by

11

placing advertisements with his phone number and speaking with potential employees, and supervised employees. (*Id.* at 4–6; D.I. 111 ¶¶ 2–7).

In his declaration, Wu states that his primary duty was to deliver vegetables and that he refused Shi when Shi offered Wu an ownership interest in East Ocean. (D.I. 15 ¶¶ 4, 15, 18; *see also* D.I. 118 at 3, 4). Wu states that he never supervised others or performed any managerial or executive duties. (*Id.* ¶ 21).

Wu is listed as a "secretary" to East Ocean in a document that gave Wu the authority to sign for East Ocean at its bank. (D.I. 112 ¶ 20; D.I. 112-1, Ex. Q, at 50 of 102).

I think there is a genuine dispute of material fact on what Wu's primary duties were while employed by Defendants. While true that some of Wu's duties may have been managerial in nature, there is conflicting testimony about whether that was his primary duty. Wu does not dispute at least some of Shi's contentions about his duties, including that Wu paid employees and participated in recruiting. But Wu asserts that his primary duty was driving, not management, and says Shi's allegations that Wu owned a portion of East Ocean are false and that he did not supervise or direct the work of anyone. (D.I. 15 ¶¶ 4, 15, 18, 21). I think there are sufficient disputes between the two parties for there to be a question of material fact as to whether Wu's primary duty at East Ocean was management.

### c. Directs Work of Others

Defendants offer no argument in their opening brief for why Wu meets the third requirement of "customarily and regularly directs the work of two or more other employees." 29 C.F.R. § 541.100(a)(3) (2024). Defendants briefly discuss it in their reply brief. (D.I. 120 at 8). Arguments first offered in a reply brief are forfeited. *In re Niaspan Antitrust Litig.*, 67 F.4th 118,

135 (3d Cir. 2023). Defendants have thus not met their burden to show they are entitled to judgment as a matter of law.

#### d. Authority to Hire and Fire Others

Defendants offer no argument in their opening brief for why Wu meets the fourth requirement of "the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100(a)(4) (2024). Defendants do not discuss it in their reply brief. (D.I. 120). Defendants have thus not met their burden to show they are entitled to judgment as a matter of law.

### 2. Count II

Wu's Count II is for unpaid wages under the FLSA. The employee exemption applies to two subsections of the FLSA. 29 U.S.C. § 213(a). These two subsections deal with minimum wages and overtime wages, not unpaid wages. *Id.* §§ 206, 207. Defendants fail to allege how this exemption applies to unpaid wages. Defendants have failed to show they are entitled to judgment as a matter of law as to Wu's Count II.

I note that there is some doubt about whether Wu's Count II for "unpaid wages" is a valid claim under the FLSA.[4] *See Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 244 (3d Cir. 2014). In *Davis*, the Third Circuit held "that pure gap time claims—straight time wages for unpaid work during pay periods without overtime—are not cognizable under the FLSA, which requires payment of minimum wages and overtime wages only." *Id.* Failure to pay minimum wages is

---

[4] In an earlier opinion in this case, I referred to "FLSA minimum wage/unpaid wages" as a provision of the FLSA. (D.I. 21 at 5–6). The only case that I cited arguably in support of that formulation was *Cherichetti v. PJ Endicott Co.*, 906 F. Supp. 2d 312 (D. Del. 2012), but that case did not involve any claims for unpaid wages.

13

explicitly covered under the FLSA, but "unpaid wages" is not. 29 U.S.C. § 206. Any amount over the minimum wage requirement that Wu alleges he is entitled to may not fall within the purview of the FLSA because the FLSA "requires payment of minimum wages and overtime wages only." *Davis*, 765 F.3d at 244. In any event, Wu's "unpaid wages" claim is covered by his Count III under the WPCA.

## IV. CONCLUSION

An appropriate order will issue.